### TENISON et al. v. WILSON.
### No. 13001.

Court of Civil Appeals of Texas. Dallas.
April 5, 1941.

Rehearing Denied May 9, 1941.

Dissenting Opinion May 16, 1941.

Coke & Coke and John N. Jackson, all of Dallas, for appellants.

Allen & Allen, of Dallas, for appellee.

BOND, Chief Justice.

Appellants instituted this suit against appellee for contribution, alleging appellee's liability to them, by reason of the fact that they had paid a joint note executed by the three, of which appellee's portion was the sum of $440. Appellee, admitting the facts giving rise to the contribution, defended by way of recoupment, that appellants had damaged him in a greater sum by converting certain assets of a dissolved corporation in which appellee had an interest, thereby discharging appellee's obligation to them. Appellants answered by general denial and specially pleaded the Two Years' Statute of Limitation, in bar of appellee's defense. At the conclusion of the evidence, the jury having been discharged, all issues of fact and law were submitted to the Court; judgment was rendered for appellee.

The facts are undisputed: On October 16, 1932, appellants and appellee, with one E. N. Maher, executed a promissory note to M. J. Orleans, in the sum of $3,250, being the balance due on a former obligation of the parties for money borrowed to purchase shares of stock of Hughes Brothers Manufacturing Company, of which appellee's portion was nine shares. The nine shares were thereafter pledged to Orleans as security for appellee's portion of the obligation. Appellee also owned eleven other shares of stock of the Manufacturing Company.

On June 18, 1935, by virtue of the expiration of its charter, Hughes Brothers Manufacturing Company ceased to exist as a corporation. On that date there were eighteen stockholders, including appellants and appellee, and seven directors. The directors concluded that it would be to the best interest of all parties to dispose of the assets of the dissolved corporation by organizing a new corporation with the same name, thereby retaining the going business and good will of the concern. Pursuant to this plan, on July 31, 1935, a new corporation was formed, the assets of the old corporation were transferred to the new corporation, and all stockholders, with the exception of the appellee, agreed to a new charter. Each stockholder in the old corporation received exactly the same number of shares in the new corporation as they had in the old. One S. W. Warner executed the charter as trustee for appellee, without appellee's consent, and the Secretary of State issued the charter with knowledge of the merger of the assets.

The new corporation was chartered with a capital of $75,000, the same amount of capital as the old corporation had at the time of its dissolution. The capital was divided into 1,500 shares of $50 each; the shares were apportioned to the stockholders in the same proportion as in the old corporation, and the value, seemingly, was the

same. Twenty shares of the new corporation were subscribed on behalf of appellee by Warner, trustee, and had a value of $1,000. There is no contention that appellants and the other directors, acting as trustees, were guilty of fraud or wrongdoing in this transaction. The dissolution of the old corporation did not occur by reason of its insolvency, or by judgment of a court in a suit brought for that purpose, or by action of the stockholders. The charter having expired by operation of law, the directors, as statutory trustees, and the stockholders, except appellee, assumed the responsibility of deciding what course of action, with reference to the disposition of the affairs of the Company, would be for the best interest of its creditors and stockholders, accordingly concluded that the wisest and best course was to organize the new corporation; thus, so doing, a new corporation continued to function for about two years when, because of debts and liens, most of which were ·taken over and assumed from the old corporation, the new corporation was placed in liquidation. The buildings and real estate were foreclosed and the machinery, other equipment and assets sold at salvage value of $5,000. Neither the appellants nor any other stockholder of either of the corporations realized anything of value from the liquidation, and there is no evidence that better results would have been obtained if the assets had been liquidated at the time of their transfer to the new corporation. We think the action of the directors and stockholders was but the exercise, in good faith, of their rights to work out in such manner as they deemed most expedient, the corporate affairs. However, their efforts proved unavailing, but we see no legal right of appellee thereby transgressed.

The facts concerning the making and payment of the note are also undisputed. On May 13, 1936, appellants paid Orleans the $3,250 note, of which appellee was a joint maker. This was a private transaction between the parties and in no way involved the corporation, or its directors. Appellee having failed and refused to pay his pro rata of the note, appellants, on October 15, 1937, filed this suit for the amount which appellee, by law and in equity, was obligated to contribute in the payment thereof. Appellee's defense, seeking to avoid liability solely because of the action of appellants and the other five trustees of the dissolved corporation, in transferring the assets to the new corporation in the manner related, was filed October 30, 1937, more than two years after his alleged cause of action accrued; thus, if appellants, as claimed by appellee, were guilty of conversion of his property or his interest in the corporation, to his damage in amount exceeding his portion of the note paid by appellants, his claim was barred by the Two Years' Statute of Limitation. (Art. 5526(2), Vernon's Ann.Tex.Civ.St.).

We are not in accord with the view of appellee that appellants were guilty of actionable conversion. Art. 1388, R.S., empowered the directors, as trustees of the dissolved corporation, to settle the affairs of the corporation, and in the name of such corporation, "sell, convey and transfer all real and personal property belonging to such company, * * * and exercise full power and authority of said company over such assets and property"; and Art. 1389, R.S. grants such trustees "three years after its dissolution * * * to settle up its affairs." Manifestly, the legislature intended by these statutes that the directors or managers of a dissolved corporation should have some discretion in settling the affairs of the corporation, responsible only for wrongdoing. The record is free of wrong. The organization of the new corporation was a bona fide and honest exercise of powers carried out by the directors as trustees, for the benefit of creditors and stockholders and· the utilization of the assets to a greater advantage. Indeed, the plan did not work out as was evidently intended, but no complaint is made, chargeable to the trustee, of any mismanagement, or fraud in the conduct of its affairs. · The evidence shows that the disposition made was the best possible under all the circumstances, or, at least, the directors as trustees deemed such was for the best interest of all concerned. No creditor or stockholder, other than appellee, complained of transfer of the assets and extension of the corporate affairs. We think that appellee was honestly and fairly dealt with, and the directors' action was the exercise of their legal rights; thus, appellee could not have recovered· in an independent action for damage on account of transfer of the assets; furthermore, if he had such action, it was barred by limitation before asserting it as a defense to this suit.

The judgment of the court below is reversed and here rendered for appellants in

the sum of $440, with 6% interest from October 16, 1933, until paid, and all costs in the court below and in this Court.

YOUNG, J., dissents.

## On Rehearing

BOND, Chief Justice.

 We find no merit in appellee's contention regarding conversion of his interest in the dissolved corporation; but, even so, such would constitute an independent cause of action, and could not operate as a reduction of appellants' claim, except by way of set off or counter-claim, avoidable under appellants' proper plea of limitation. The rule of law is that where the defensive matter interposed by the defendant constitutes an independent cause of action and does not go to the foundation of the plaintiff's claim, it cannot operate as a reduction of the demand except by way of set off or counter-claim. Where the subject matter of the defense arises or grows out of plaintiff's demand, and is intrinsically and purely of a defensive nature and could operate only to negative the rights asserted by plaintiff to recover upon the demand, the statute of limitations does not apply. Nelson v. San Antonio Traction Co., 107 Tex. 180, 175 S.W. 434; Mason v. Peterson, Tex. Com.App., 250 S.W. 142. The record shows, without dispute, that appellee's alleged claim for damages, growing out of appellants' acts of conversion, is not related to appellants' suit for contribution, or the transactions from which such contribution arose. The two causes are separate and independent actions, growing out of far-distant unrelated transactions between the parties. Appellee's motion for rehearing is overruled.

YOUNG, J., dissents.

YOUNG, Justice (dissenting).

The majority holds that under Arts. 1388, 1389, the trustees (directors) of a dissolved corporation may reincorporate its assets for another fifty years, including the 1/75th interest (20 shares) of appellee, a protesting stockholder; and that such action is a legal settlement of the dead corporation's assets as to all stockholders within the meaning of the above statutes on liquidation. I dissent from this holding.

Certainly the statutory language allows the trustees some discretion in an outright sale of assets, looking to a distribution; but nowhere is found any authority for the same trustees to form another corporation, appropriate a dissenting stockholder's interest in the transaction, and to term the new venture a settlement of the particular interest. In point is Gresham v. Island City Sav. Bank, 2 Tex.Civ. App. 52, 21 S.W. 556, quoting from the syllabus: "All but three stockholders of an insolvent bank agreed to transfer to certain persons all the stock, in consideration that the latter would provide $100,000 for resuming business by the bank under a new organization, by the issuance of a new stock under its charter, and pay its creditors 74 per cent. of the amounts due them in full settlement. Held, that the execution of such agreement by the parties to it did not affect the rights of stockholders not consenting thereto." A similar note heads the case of Mason v. Pewabic Mining Co., 133 U.S. 50, 10 S.Ct. 224, 33 L.Ed. 524: "On the dissolution of a corporation at the expiration of the term of its corporate existence, each stockholder has the right, as a general rule, and in the absence of a special agreement to the contrary, to have the partnership property converted into money, whether such a sale be necessary for the payment of debts, or not."

Regarding corporate dissolution laws, 19 C.J.S., Corporations, § 1745, page 1514, says: "The trustees have no power under these statutes to continue the business with no intention of winding it up * * *"; and the general rule is stated in 13 Am.Jur., Corporations, Sec. 1366, pp. 1206, 1207: "The extension allowed by statute for the winding up of dissolved corporations implies a continuation of their corporate existence in a qualified manner only and within the strictly limited powers and purposes as provided in the statutes. * * * it has no power to form a new company or amend its articles of incorporation." See, also, 11 T.J. p. 135, § 470, Effect of Dissolution.

The majority concludes that the words "settle the affairs" and "sell, convey and transfer," of Art. 1388, embrace the power of organization of a new corporation in the face of minority objection, just so the action is taken by the trustees "for the benefit of creditors and stockholders and the utilization of the assets to a great-

er advantage." No decisions are cited for the statement just made, and I have found none.

The assets of this defunct concern being a trust fund in the hands of its directors for the benefit of creditors and stockholders (Waggoner v. Herring-Showers Lumber Co., 120 Tex. 605, 40 S.W.2d 1), their appropriation of appellee's interest for a purpose foreign to a winding up of the corporate affairs was a legal conversion of the 20 shares by said trustees; with consequent liability for the then value thereof. All parties who act in effecting a conversion may be held jointly and severally liable; 42 T.J., Trover and Conversion, § 25, p. 535; and the statute (Art. 1388) expressly provides: "Said trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

The trial court found that the value of appellee's 20 shares, when he was unwillingly made a party to the reincorporation, was $1,000; and that his 9 shares, attached to the Orleans note, on which appellants seek contribution herein, were reasonably worth $450. The suit by plaintiffs (directors of the dead corporation) was on an alleged liability against Wilson for $440; each having a separate claim, but joined by the trial court because the basis thereof was contribution—a right of equitable origin and governed by equitable considerations. 10 T.J., Contribution, p. 539; Glasscock v. Hamilton, 62 Tex. 143. Relief by contribution will not be awarded unless the party seeking it is equitably entitled thereto. United States Fidelity & Guaranty Co., v. Century Indemnity Co., Tex.Civ.App., 78 S.W.2d 737.

Appellee was justly entitled to raise the defense of conversion against demands of the trustees, and in the present suit; the plea merely constituting a superior equity in appellee that would preclude a recovery by plaintiffs. It was undoubtedly assertable to the extent of the 9 shares, which were collateral to the initial obligation—the Orleans note.

Defendant Wilson is here seeking only an abatement of plaintiffs' action to the extent of his prior injury; and his pleading is not affected by limitation: "There is no problem of limitation when defendant's answer is 'of an intrinsically defensive nature' and amounts merely to a negation or abatement of plaintiff's claim.

Thus non-performance of a contract according to specifications may be urged in defendant's answer as failure of consideration and will defeat a suit on the contract, though barred as the basis of an independent action against plaintiff." 18 Tex.Law Review, p. 210; Mason v. Peterson, Tex.Com.App., 250 S.W. 142; Morriss-Buick Co. v. Davis, 127 Tex. 41, 91 S.W.2d 313; Hinds v. Biggs, Tex.Civ. App., 142 S.W.2d 902, Syl. 8.

The trial court's judgment should be affirmed.