PORTER v. C. O. PORTER MACHINERY COMPANY.

1. CORPORATIONS—SALE OF ALL ASSETS—APPROVAL OF DIRECTORS—STOCKHOLDERS.

Proposed sale of all assets and business of old corporation to a newly-organized corporation after resolution for renewal of corporate existence requiring a 2/3 vote failed to pass *held,* to have been strictly in accordance with law and not *malum in se* nor *malum prohibitum,* where such sale was effected after approval by the directors and the majority of the stockholders (CL 1948, §§ 450.44, 450.57, as amended by PA 1951, No 239).

2. SAME—SALE OF ALL ASSETS—GOOD WILL—LIABILITIES.

Minority stockholders of corporation whose assets were all to be sold with approval of the majority *held,* entitled to their proportionate share of the net proceeds from the sale after due provision for payment of debts, such proceeds to embrace the good will of the going concern as well as the liabilities (CL 1948, §§ 450.44, 450.57, as amended by PA 1951, No 239).

REFERENCES FOR POINTS IN HEADNOTES

[1–8] 13 Am Jur, Corporations § 1214 *et seq.*
[1–8] Construction and effect of provisions for payment of dissenting stockholders in statute relating to reorganization of corporations.   87 ALR 597;  162 ALR 1237;  174 ALR 960.
Constitutionality, construction, and effect of statutory or charter provisions relating to sale of all or substantially all, of assets of corporation or division or distribution of proceeds.  79 ALR 624.
[8–10, 12] 13 Am Jur, Corporations § 1226 *et seq.*
[8–10, 12] Valuation of stock of dissenting stockholders in case of sale of corporation's entire assets. 95 ALR 922.
[11] 11 Am Jur, Constitutional Law § 51.

3. SAME—SALE OF ALL ASSETS—MINORITY STOCKHOLDERS—IRREPARABLE INJURY.

> The proposed sale of all of the assets of a corporation shortly before the expiration of the term and after resolution for extension of corporate life had failed to pass by a 2/3 vote *held*, legal in the absence of fraud and not preventable by the minority stockholders, particularly when there is no showing of irreparable injury to them in the event of such sale.

4. SAME—CONTINUANCE OF CORPORATE LIFE—SALES OF ALL ASSETS.

> Minority stockholders in family-held corporation were not entitled to insist that corporation, nearing end of its permissible term, be continued to the end of the term and then its assets be offered at sale at which all parties could bid rather than have all of its assets sold to a new corporation, where there is no assurance of what the majority or minority stockholders would bid, if at all, in view of the family quarrel.

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—NATURE OF SALE OF CORPORATE ASSETS.

> Whether or not the tax-free sale of all the assets of a corporation whose term was about to expire to a newly-organized corporation should be enjoined so that a liquidation sale, resulting in a heavy capital gains tax under the Federal law, might be conducted at the end of the term is not discussed in suit by minority stockholders to prevent proposed sale.

6. CORPORATIONS—SALE OF ALL ASSETS—MINORITY STOCKHOLDERS.

> Minority stockholders have not the vested right to prevent a sale of all of the assets of a corporation, if authorized by the directors and the majority of the stockholders, unless there is fraud (CL 1948, §§ 450.44, 450.57, as amended by PA 1951, No 239).

7. SAME—SALE OF ALL ASSETS—CONSIDERATION—STOCK IN NEW CORPORATION.

> The consideration for the sale of all of a corporation's assets may be the stock in another corporation (CL 1948, § 450.57, as amended by PA 1951, No 239).

8. SAME—SALE OF ALL ASSETS—MINORITY'S ALTERNATIVE RIGHTS.

> The rights of dissenting minority stockholders are fully protected under pertinent statute, where all of the assets of a corporation whose term was about to expire were sold to a newly-organized corporation and minority offered either the fair cash value of their shares or the same proportion of stock in the new corporation (CL 1948, § 450.44).

9. SAME—SALE OF ALL ASSETS—MINORITY STOCKHOLDER—APPRAISAL REMEDY.

The appraisal remedy set forth in the general corporation act for a minority stockholder when all of the assets of a corporation are sold is his exclusive remedy, where there is no fraud or lack of good faith in the sale (CL 1948, § 450.44).

10. SAME—SALE OF ALL ASSETS—MINORITY STOCKHOLDER—APPRAISAL REMEDY.

The exclusive appraisal remedy of the minority stockholder upon the sale of all of the assets of the corporation as set forth in the general corporation act is constitutional (CL 1948, § 450.44).

11. CONSTITUTIONAL LAW—CONSTRUCTION.

The Constitution is a living instrument and should be interpreted in such manner that it will remain adaptable to the necessities of a changing law.

12. CORPORATIONS—SALE OF ALL ASSETS—APPRAISAL PERIOD.

The period within which minority stockholders may avail themselves of the appraisal procedure set forth in the general corporation act is ordered to commence upon the day decision is rendered by Supreme Court on appeal in minority stockholders' suit to prevent sale of all assets of corporation whose term is about to expire to newly-organized corporation after resolution to extend corporate term failed to be approved by a 2/3 vote (CL 1948, §§ 450.44, 450.57, as amended by PA 1951, No 239).

DETHMERS, C. J., and CARR and SHARPE, JJ., dissenting.

Appeal from Superior Court of the City of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 9, 1953. (Docket No. 64, Calendar No. 45,710.) Decided April 13, 1953. Rehearing denied June 8, 1953.

Bill by Ethel B. Porter and others against C. O. Porter Machinery Company and others to restrain contemplated sale of assets of defendant corporation. Decree for defendants. Plaintiffs appeal. Affirmed.

*Harrington, Waer, Cary & Servaas,* for plaintiffs.

*Warner, Norcross & Judd (George S. Norcross* and *Conrad E. Thornquist,* of counsel), for defendants.

Sharpe, J. (*dissenting*). This is a suit by the minority stockholders of the C. O. Porter Machinery Company, Incorporated, against the company and Clare O. Porter and Dale G. Porter, as officers and directors, to restrain a contemplated sale of all of the assets of the company. The facts necessary to a decision are as follows: The C. O. Porter Machinery Company was incorporated in 1923, for a 30-year period. Its charter expired January 10, 1953. Plaintiffs are the owners of 42% of the capital stock of the company, while defendants own or control 55% of the stock of the company. The company owns and operates 2 woodworking machinery plants in Grand Rapids located about 2 miles apart. On May 20, 1952, at the annual stockholders' meeting, a resolution was offered to extend the corporate term. This resolution required a 2/3 vote and failed to pass. It is apparent that both groups of stockholders wished to acquire control of the company, and, if necessary, to purchase the entire stock of the company. The following letter was written by plaintiffs' attorney to defendants' attorney:

"June 30, 1952

"Mr. George S. Norcross
"Michigan Trust Building
"Grand Rapids 2, Michigan
    "In re: C. O. Porter Machinery Co.
"*Dear Mr. Norcross:*
    "The offer of $215,000 for the 410 shares of stock owned by Mrs. T. Earl Porter, Mrs. Kathlyn Collins and Burke E. Porter is declined, and in that connection your attention is called to the fact that the

book value alone of the 410 shares on May 31st was approximately $230,000.

"The feeling of your clients that they wish to continue in the management and operation of the business is quite understandable, but it is no stronger than is the feeling of Burke Porter that he would like to obtain control of a business in which he and his family have been interested for so many years and with which he was actively connected for such a long time.

"Very truly yours,

(s) OSCAR E. WAER"

On August 6, 1952, articles of incorporation of West Michigan Machinery Company were filed with the Michigan corporation and securities commission. The directors of this company were C. A. Bradshaw, J. W. Eardley and R. W. Shuster. These directors were connected with the firm of lawyers representing the defendants. Following the organization of this corporation, the company made an offer to the C. O. Porter Machinery Company to purchase all of its assets. The offer reads as follows:

"August 27, 1952

"C. O. Porter Machinery Company
"666 Front Avenue, N.W.
"Grand Rapids, Michigan
"*Gentlemen:*

"The undersigned, West Michigan Machinery Company (hereinafter referred to as the 'purchaser'), proposes to purchase all of the property and assets of C. O. Porter Machinery Company (hereinafter referred to as the 'seller'), of every kind and description.

"This is to confirm the arrangements with respect to the purchase of the assets by this corporation:

"(1)  The seller represents that:

"(a)  It is a corporation duly organized and existing under the laws of Michigan, with an authorized capital consisting of 1,000 shares of common stock,

without par value, of which 960 shares have been duly issued and are now outstanding, fully paid and nonassessable, excluding shares held in the treasury of the corporation.    *    *    *

"(3) The purchaser represents that:

"(a) It is a corporation duly organized and existing under the laws of the State of Michigan, with an authorized capital consisting of 250,000 shares of common stock of the par value of $1 per share, none of which has been issued.

"(b) The purchaser has no outstanding options for the purchase of its authorized stock, or other agreements not made in the ordinary course of business, except the subscription by the incorporator for 1,000 shares of common stock, $1 par value, which will be absorbed in the consummation of this agreement.

"(c) There is no material litigation threatened or pending against the purchaser.

"(4) Subject to the correctness of the representations contained in paragraphs (1) and (3), and the performance of the matters described in paragraph (2), at or prior to the purchase of the property and assets of the seller, and subject to the performance by seller and purchaser of all obligations to be performed at or prior to such purchase, and subject to all other terms and conditions of this agreement, the purchaser hereby agrees to buy and the seller agrees to sell all of the property and assets, real, personal or mixed, tangible or intangible, and wheresoever situated, including its good will and corporate franchises, subject to all liabilities of the seller and all other liabilities of the seller incurred in the ordinary conduct of its business up to and including the date of conveyance of said property and assets to the purchaser, and in full payment therefor, the purchaser agrees to deliver and the seller agrees to accept 240,000 fully paid and nonassessable shares of the common stock, $1 par value, of the purchaser, in such denominations and registered in such names as the seller shall have requested in written notice to

the purchaser at or before the time and date of conveyance of the seller's property and assets.

"(5) The obligation of the purchaser to purchase the property and assets of the seller, and the obligation of the seller to sell is subject to the following further conditions:

"(a) On or prior to conveyance of the property and assets, counsel for the purchaser shall have furnished to it their written opinion that (i) title to the property and assets to the seller is in satisfactory condition; (ii) that the transaction herein contemplated is a tax-free reorganization under the Federal tax law; (iii) that the corporate proceedings required to be had by this agreement by both purchaser and seller are in accordance with the articles of incorporation and bylaws of both corporations, and according to law, and that such action, when taken, effectually consummates the action contemplated herein; (iv) that upon completion of the transaction the purchaser will have good and sufficient title to the property and assets of the seller, subject to the liabilities as contemplated by this agreement.

"(b) The transfer and conveyance of the property and assets in accordance herewith shall be completed on or before 60 days from the date hereof, unless otherwise agreed between the parties in writing.

"(6) The seller agrees that promptly upon receipt of the shares of stock to be delivered by the purchaser in accordance herewith, that it will distribute the same immediately to its shareholders, so that the holders of its common stock, no par value, shall receive 250 shares of the common stock of the purchaser for each share of the common stock, no par value, of the seller held.

"(7) The seller agrees that upon consummation of this agreement, it will terminate its corporate existence as soon as possible, all in the manner approved by counsel.

"(8) This agreement may be amended at any time, either before or after consummation thereof, by mutual agreement between the parties.

"Please confirm at the place indicated below that the foregoing sets forth the agreement between us.

"Very truly yours,

"West Michigan Machinery Company

"(s) By Dale Porter,

"Vice President.

"Accepted the above date

"C. O. Porter Machinery Company

"By . . . . . . . . . . . . . . . . . . . . . . . . . .

"C. O. Porter—President"

At a later meeting of the officers and stockholders of the West Michigan Machinery Company, the officers resigned and the following officers were elected: president and treasurer, C. O. Porter; secretary, Bertha McEachron; vice-president, Dale G. Porter. The board of directors elected were as follows: C. O. Porter, Dale G. Porter and Frederic Stolp.

At this meeting the offer of the C. O. Porter Machinery Company, heretofore noted, was accepted:

"That the proposal to acquire all of the assets of C. O. Porter Machinery Company, subject to liabilities, in consideration of the issuance by this corporation of 240,000 fully paid and nonassessable shares of its capital stock be, and the same is hereby approved, and the proper offices [officers?] are hereby authorized and directed to execute and deliver the proposal to C. O. Porter Machinery Company in the form presented and read to the meeting."

Upon distribution of the stock of the West Michigan Machinery Company, C. O. Porter Machinery Company agreed to terminate its corporate existence and later change the name of West Michigan Machinery Company back to C. O. Porter Machinery Company. On September 5, 1952, plaintiffs filed a bill in chancery in the superior court of Grand Rapids, in which they sought the following relief:

"That * * * defendants * * * be permanently enjoined from taking corporate action involv-

ing a sale, or an attempt to sell, the properties and business of said corporate defendant to said West Michigan Machinery Company or any other corporation created by defendants solely for the purpose of effecting a sham and not a bona fide sale and for the purpose of, in effect, extending the corporate life of defendant corporation contrary to the rights of plaintiffs and in violation of the Michigan corporation law requiring a 2/3 vote for such extension; and that the defendants be restrained by a temporary order issued by this court from taking any such action pending an adjudication of the issues herein involved."

Upon the filing of the above bill, a temporary injunction was issued. On September 24, 1952, defendants filed a motion to dismiss the bill of complaint and for dissolution of the injunction. Testimony was taken and on November 19, 1952, an order was entered dismissing plaintiffs' bill of complaint. In an opinion filed, the trial court stated:

"The directors of the defendant corporation will be the directors of the new corporation and of course the business of the C. O. Porter Machinery Company will be continued, and it is proposed to change the name of the West Michigan Machinery Company as soon as the transaction is completed to the name of the present defendant.

"Therefore, it is proposed by these proceedings to continue the business of the C. O. Porter Machinery Company and in effect to continue its corporate life through the medium of the proposed sale and which in effect will overcome the objections of the minority stockholders to the continuance of the corporate life.

"While the effect of the sale proposed will be to continue the corporation, there is nothing in the code which would prohibit or make illegal such a sale even if it was made after a negative vote of the stock on the question of continuing the corporate life. No consideration can be given by the court to the fact

that all of the stockholders are related. That is a negative fact. Whoever the respective holders may be so far as their legal rights are concerned, each must be governed by the rules of applicable law. In this a minority stockholder must accede to the authority of the corporation directors unless it is shown that there is mismanagement or fraud which is resulting or will result in a loss to the minority stockholders."

Plaintiffs appeal and urge that a sale of the company's assets, within the meaning of the Michigan corporation code, means a good-faith sale, and not a mere subterfuge and an attempt to do indirectly what cannot be done directly, and that a sale not made in good faith is void against any dissenting stockholder.

Defendants urge that a corporation has the power to sell all of its assets in exchange for the stock of another corporation and rely upon CL 1948, § 450.57, as amended by PA 1951, No 239 (Stat Ann 1951 Cum Supp § 21.57):

"Every corporation formed or existing under this act may sell, lease or exchange all or substantially all of its property and assets, including its good will and its corporate franchises, upon such terms and conditions and for such consideration, which may be in whole or in part shares of stock in, and/or other securities of, any other corporation or corporations, domestic or foreign, as its board of directors shall deem expedient and for the best interests of the corporation, when and as authorized by the affirmative vote of the holders of a majority of the shares of each class of stock issued and outstanding given at a shareholders' meeting duly called for that purpose, or when authorized by the written consent of the holders of a majority of the shares of each class of stock issued and outstanding: Provided, That the articles may require the vote or written consent of the holders of a larger proportion of the shares

of each class of stock issued and outstanding.  When any action by a corporation permitted by this section is approved by the authorized written consent of shareholders, it shall be the duty of the board of directors of the corporation to mail notice of such consent to all shareholders of the corporation addressed to the addresses of the shareholders as they appear on the books of the corporation.  The 20-day period of objection and demand referred to in section 44 of this act shall begin on the day following the date of mailing such notice."

and that plaintiffs' only remedy is under section 44 of the act.  Section 44 (CL 1948, § 450.44 [Stat Ann § 21.44]) in part reads as follows:

"If a corporation has authorized the sale, lease or exchange of all or substantially all of its assets a shareholder who was a shareholder at the time such action was authorized and who voted against such action may, within 20 days after the date upon which such action was authorized but not thereafter, object thereto in writing and demand from the corporation the payment of the fair cash value of his shares as of the day preceding the day such action was authorized by the shareholders."

In coming to our conclusion in this case we have in mind that when the defendants (majority stockholders) failed to extend the corporate existence of the C. O. Porter Machinery Company, they organized a so-called dummy corporation called West Michigan Machinery Company, and then by a majority vote of the stockholders of the C. O. Porter Machinery Company transferred the assets of the old company to the new.  It also appears that it was the intention of defendants to then dissolve the old company and later amend the articles of incorporation of the new company, by giving it the name of the old company.  The reason for this action is that:

Section 3 of article 12 of the Constitution of the State of Michigan provides that:

"No corporation shall be created for a longer period than 30 years * * * but the legislature may provide by general laws * * * for 1 or more extensions of the term of such corporations, while such term is running, not exceeding 30 years for each extension, on the consent of not less than 2/3 of the capital stock of the corporation."

Section 60 of the Michigan corporation code (CL 1948, § 450.60, as amended by PA 1951, No 352 [Stat Ann 1951 Cum Supp § 21.60]), provides that:

"Any stock corporation whose term is about to expire by limitation may, at any time within 2 years next preceding the expiration of such term, by the consent of the holders of at least 2/3 of its outstanding shares at any annual meeting or at any special meeting of its shareholders called for that purpose direct the continuance of its corporate existence for such further term as permitted by law."

In *Ervin* v. *Oregon R. & Nav. Co.* (CC), 27 F 625, 630, the court had occasion to discuss the rights of majority and minority stockholders. It was there said:

"It cannot be denied that minority stockholders are bound hand and foot to the majority in all matters of legitimate administration of the corporate affairs; and the courts are powerless to redress many forms of oppression practiced upon the minority under the guise of legal sanction, which fall short of actual fraud. This is a consequence of the implied contract of association, by which it is agreed, in advance, that a majority shall bind the whole body as to all transactions within the scope of the corporate powers. But it is also of the essence of the contract that the corporate powers shall only be exercised to accomplish the objects for which they were called into existence, and that the majority

shall not control those powers to pervert or destroy the original purposes of the corporators. *Livingston* v. *Lynch,* 4 Johns Ch (NY) 573; *Hutton* v. *Scarborough Cliff Hotel Co.,* 2 Drew & S 514 (62 Eng Rep 715); *Brewer* v. *Boston Theater,* 104 Mass 378; *Keane* v. *Johnson,* 9 NJ Eq 401; *Rollins* v. *Clay,* 33 Me 132; *Clinch* v. *Financial Corp.,* 4 Ch App (Eng) 117 (38 LJ Ch 1, 19 LT 334, 17 WR 84); *Clearwater* v. *Meredith,* 1 Wall (68 US) 25 (17 L ed 604). It is for this reason that the majority cannot consolidate the corporation with another corporation, and impose responsibilities and hazards upon the minority not contemplated by the original enterprise, unless express statutory authority for this purpose is conferred upon the majority. It is no more repugnant to the purposes of the association to permit the majority to merge and consolidate the corporation with another corporation than it is to permit them to dissolve it, and abandon the enterprise for which it is created, when no reasons of expediency require this to be done. A dissolution under such circumstances is an abuse of the powers delegated to the majority. It is no less a wrong because accomplished by the agency of legal forms."

In *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 NY 185 (123 NE 148), the court had occasion to pass upon the good faith of majority stockholders. It was there said:

"When a number of stockholders constitute themselves, or are by the law constituted, the managers of corporate affairs or interests, they stand in much the same attitude towards the other or minority stockholders that the directors sustain generally towards all the stockholders, and the law requires of them the utmost good faith. *Farmers' Loan & Trust Co.* v. *New York & Northern Railway Co.,* 150 NY 410, 430 (44 NE 1043, 34 LRA 76, 55 Am St Rep 689); *White* v. *Kincaid,* 149 NC 415 (63 SE 109, 23 LRA NS 1177, 128 Am St Rep 663); *Ervin* v. *Oregon R.*

& Nav. Co. (CC), 27 F 625. In taking corporate action under the statute, the stockholders are acting for the corporation and for each other, and they cannot use their corporate power in bad faith or for their individual advantage or purpose. *J. H. Lane & Co.* v. *Maple Cotton Mills,* 141 CCA 448 (226 F 692). * * *

"Judicial authority does not extend to enjoining the exercise of a right conferred by legislative authority. The courts cannot pass upon the question of the expediency of the dissolution, for that is the very question which the legislature has authorized the board of directors and the stockholders to decide. They can, however, and will, whenever the facts presented to them in the appropriate action demand, inflexibly uphold and enforce, in accordance with established equitable principles, the obligations of the fiduciary relation. The good faith of the individual defendants is a proper and fundamental subject to be adjudged. Bad faith, fraud, or other breach of trust constitutes a foundation for equitable relief."

In *Theis* v. *Spokane Falls Gas Light Co.,* 34 Wash 23 (74 P 1004), the right of a majority of stockholders to dissolve a company in order to get rid of a disagreeable stockholder was discussed. It was there said:

"It is apparent that, if the respondents could have purchased appellant's stock, the disincorporation would not have been thought of. The practice is one which is frequently indulged in for the purpose of what is described in vulgar phrase as 'freezing out' small stockholders—a compliance with the letter, instead of the spirit, of the statute—a pernicious practice which courts of equity cannot too promptly condemn. A dissolution of a corporation, within the contemplation of the law, is the death of the corporation. It means a disintegration, a separation, a going out of business. But in this case all of the elements of dissolution are wanting. The corporation, with a slightly different name, proceeded in the

same town, with the same property, the same powers, and substantially the same owners. All the difference is about what was testified by the president of the corporation—that, after the new company was formed, the minority stockholders' interest would be represented by a deposit in the bank, instead of stock in the corporation. It might with as much reason be concluded that a man could escape responsibilities by changing his name, and that, by such change, his moral or financial relations with those with whom he was engaged in business under the old name would be affected. It is not enough to say that appellant received all his stock was worth. He embarked in this business, and had a right to stay in the business during the expressed life of the corporation, or until it was dissolved by a fair compliance with the law."

Fairness and good faith are essential on the part of those acting under statutory authority in the sale of all, or substantially all, of the corporate assets over the protest of minority stockholders. In 13 Am Jur, p 818, § 803, it is said:

"In some States statutes have been enacted authorizing corporations or the majority or a certain per cent of the stockholders thereof to sell all the corporate assets. Statutes of this kind have been sustained on the ground of the reserved power of the State to amend or repeal corporate charters or the laws under which corporations are organized. If the statute is in force at the time the corporation is formed or the contract of subscription entered into, the dissenting shareholder, it would seem, is precluded from objecting, if the sale is in good faith. However, fairness and good faith are essential on the part of those acting under statutory authority in the sale of all of the corporate assets over the protest of minority stockholders. Thus, even where the majority of the stockholders of a corporation are authorized by statute to dissolve the corporation and sell its property and divide the proceeds, despite the opposition of the minority stockholders, the majority

cannot exercise their powers in a way to buy the property for themselves and exclude the minority from a fair participation in the fruits of the sale."

Good faith is also essential in the termination and dissolution of a corporation. See *Kavanaugh* v. *Kavanaugh Knitting Co., supra.*

In the case at bar, the conflict arises between section 57 of the Michigan corporation code (CL 1948, § 450.57, as amended by PA 1951, No 239 [Stat Ann 1951 Cum Supp § 21.57]) and section 3 of article 12 of the Constitution of the State of Michigan. We are of the opinion that the legislature in enacting section 57 of the Michigan corporation code never intended to provide a way of escaping the prohibition against the extension of the corporate franchise without the necessary 2/3 majority vote required by the Michigan Constitution. To do so would permit a majority of stockholders to do by indirection what they could not accomplish directly. It follows that sales of corporate assets as authorized by section 57 of the Michigan corporation code must be good-faith sales. The sale made in the case at bar was not such a sale as is contemplated by the statute.

The decree of the superior court should be reversed and a decree should be entered setting aside the sale to the West Michigan Machinery Company, with costs to plaintiffs.

DETHMERS, C. J., and CARR, J., concurred with SHARPE, J.

BUTZEL, J. The facts are set forth in Mr. Justice SHARPE's opinion for reversal. I believe that the trial court's order dismissing plaintiffs' bill of complaint should be affirmed. The sale of the assets and business of the old corporation to the new corporation was strictly in accordance with law. There was nothing *malum in se* or *malum prohibitum* in the

action of the appellees. Appellants, however, claim that the constitutional provision limiting the term of corporation to 30 years was violated by defendants by indirection and circumvention. The term of the old corporation was about to expire. Its franchise has never been renewed. There is no claim that the new corporation was not organized strictly in accordance with law. The sale of the assets and business also was legally made, after approval by the directors and the majority of the stockholders. Notwithstanding the fact that the old corporation paid but few dividends, its business had grown and a very large surplus accumulated and invested in the rapidly growing business. Liquidation proceedings frequently entail large expense, damage to the good will of the corporation and possibly other losses. The minority stockholders are entitled to their proportionate share of the net proceeds from the sale of the corporate assets, after due provision has been made for the payment of debts. This they are offered in an equivalent number of shares of stock in the new corporation, or, at their option, payment in cash for their shares of stock in the old corporation after a fair appraisal in manner provided by law. As the trial court held, this assessment would take into consideration all of the assets of the corporation, including good will, as well as the liabilities; that the proposed sale was legal and in the absence of fraud cannot be prevented by the minority stockholders, particularly when there is no showing of an irreparable injury to them in the event of such sale.

Appellants contend that they were entitled to insist upon the corporation continuing to exist until the end of its term, and then the assets be offered at a sale at which all parties can bid and the highest bidder acquire the business. There is no assurance of what the majority or minority stockholders would bid, if at all. There seems to have been a quarrel

between the 2 branches of the family and the parties desired to purchase each other's shares, but no agreement could be reached.

Appellees further contend that a sale of stock in the new corporation will result in an exchange of stock and that this would be a tax-free transaction, while a sale through liquidation, however, might result in a heavy capital gains tax under the Federal law. We shall not discuss this phase of the case.

Minority stockholders, particularly in a closely-held corporation, have certain disadvantages. They have not the right to prevent a sale of the assets, if authorized by the directors and the majority of the stockholders, unless there is fraud. The statute, fully set forth in the opinion for reversal (CL 1948, § 450.57, as amended by PA 1951, No 239 [Stat Ann 1951 Cum Supp § 21.57]), distinctly provides that the consideration for the sale may also be stock in another corporation. This has become common practice and has resulted in the growth and development of many of the larger corporations. It has met with judicial approval. In *Voigt* v. *Remick*, 260 Mich 198, the sale of assets to another corporation formed by members of the selling corporation was upheld. See, also, *Hill* v. *Page & Hill Co.*, 198 Minn 30 (268 NW 705), in which the right to sell the assets of a corporation whose term was about to expire to a new corporation, formed by a group of stockholders of the old corporation, resulting in an exchange of stock, was upheld. To like effect, see *Greene* v. *Stevenson*, 295 Ky 832 (175 SW2d 519); *Tenison* v. *Wilson* (Tex Civ App), 151 SW2d 327; *Topkis* v. *Delaware Hardware Co.*, 23 Del Ch 125 (2 A2d 114).

In *Weckler* v. *Valley City Milling Co.*, 93 F Supp 444 (affirmed, CCA Sixth Cir, 188 F2d 367), so heavily relied upon by appellants herein, the court in holding that the reorganization there in question was in fraud of the rights of holders of preferred stock

on which a very large amount of accrued dividends were unpaid, added the statement (p 456):

"This is not to say that a corporation may not under appropriate circumstances and in good faith sell its assets to another corporation which has been formed at the instigation of the former."

Also, see *Havender* v. *Federal United Corp.*, 23 Del Ch 104 (2 A2d 143), 24 Del Ch 96 (6 A2d 618), 24 Del Ch 318 (11 A2d 331); *Hottenstein* v. *York Ice Machinery Corp.* (CCA), 136 F2d 944; *McNulty* v. *W & J Sloane,* 184 Misc 835 (54 NYS2d 253); *Porges* v. *Vadsco Sales Corp.,* 27 Del Ch 127 (32 A2d 148).

A dissenting shareholder has no vested right to object to a sale of total corporate assets when authorized by the directors and a majority of the stockholders, a right which the majority had many years prior to the incorporation of the old company, also a defendant herein. For a full discussion, see Wilgus & Hamilton, Michigan Corporation Law (2d ed 1950), p 330. The rights of dissenting minority stockholders has been further protected in many States by laws similar to that of Michigan, which provides in CL 1948, § 450.44 (Stat Ann § 21.44), that a stockholder who objects to the sale of the corporate assets shall, by proper action, be entitled to receive the fair cash value of his shares, either as agreed upon, or, in the event of disagreement, by 3 disinterested parties appointed by the circuit judge of the county where the corporation has its registered office. The true value of assets includes the good will of the vendor corporation. Plaintiffs cannot claim that they have been defrauded or that there is any bad faith, when they are offered the equivalent number of shares in the same proportion in the new corporation as that they held in the old one, the same as the majority will receive, or at their option receive the full cash value of their shares in

the old corporation. No bad faith or fraud whatsoever has been shown. The term of the old corporation is ended. The new corporation is not an extension of the term of the old corporation.

CL 1948, § 450.44 (Stat Ann § 21.44), further provides that the "objection by any stockholder to any action of the corporation provided in this section and his rights hereafter under this section shall be his exclusive remedy." In New York, where the question of exclusive remedy has arisen, the courts have held that the appraisal remedy provided by the New York stock corporation law is the exclusive remedy. *Anderson* v. *International Minerals & Chemical Corp.*, 295 NY 343 (67 NE2d 573); *Beloff* v. *Consolidated Edison Co. of New York,* 300 NY 11 (87 NE2d 561). Were there any fraud or lack of good faith shown, a different question would be presented, but there is no such showing here. In the opinion for reversal, several cases of other jurisdictions and over 50 years old, and one 49 years old, are cited. The right to appraisal is comparatively new. The concept of the law of corporations and its limitations has changed very materially in the last half century. The Constitution is a living instrument and should be interpreted in such manner that it will remain adaptable to the necessities of a changing law. *John Hancock Mutual Life Insurance Co.* v. *Ford Motor Co.,* 322 Mich 209. We shall not further discuss these cases. The defendants acted fully within their rights.

The order of dismissal is affirmed, with costs to appellees. In order to avoid any possible question, the time for demanding the appraisal shall begin from the day this opinion is handed down.

ADAMS, BUSHNELL, BOYLES, and REID, JJ., concurred with BUTZEL, J.