WERNER, ET AL. PROFIT SHARING PLAN FOR THE BENEFIT OF FRED WERNER,
EDWARD TARAN, ALAN KAHN AND JOHN H. NORBERG, JR., ON BEHALF OF THEM-
SELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS v. JOHN M. ALEXANDER, JR.;
P.C. BARWICK, JR.; J. MELVILLE BROUGHTON, JR.; SIDNEY R. FRENCH;
MARVIN D. GENTRY; ALEXANDER H. GRAHAM, JR.; M. REX HARRIS; WILLIAM
H. KINCHELOE; CHAUNCEY W. LEVER; LYNN T. McCONNELL; JOHN F.
McNAIR, III; JACK A. MOODY; JOHN S. RUSSELL; ROBERT W. GRIFFIN; AND
DAVID T. WOODARD, DEFENDANTS

No. COA97-1083

(Filed 4 August 1998)

### Corporations— minority shareholders—value of assets—fraud not shown

The trial court correctly granted defendants' motion to dis-
miss under N.C.G.S. § 1A-1, Rule 12(b)(6) in an action alleging
that defendant board of directors had appointed a special com-
mittee as a sham which would ultimately result in valuing the cor-
poration's assets below their real worth so that the State would
be able to purchase plaintiff-minority shareholders' interest at an
unfair price. The appraisal remedy in N.C.G.S. § 55-13-02(b) is the
exclusive remedy for dissatisfied shareholders unless they can
show the transaction is "unlawful" or "fraudulent." Plaintiffs here
have a legitimate concern that the defendants act in such a way
as to maximize shareholder value, but their complaint fails to
demonstrate how the defendants' conduct amounted to a false
representation or concealment of a material fact reasonably cal-
culated and intentionally made to deceive plaintiffs, which in fact
did deceive plaintiffs to their detriment.

Appeal by plaintiffs from judgment entered 18 June 1997 by Judge
Robert L. Farmer in Wake County Superior Court. Heard in the Court
of Appeals 23 April 1998.

*McDaniel, Anderson & Stephenson, L.L.P., by L. Bruce
McDaniel; Milberg Weiss Bershad Hynes & Lerach, LLP, by
Melvyn J. Weiss, Steven G. Schulman, Edith M. Kallas and
U. Seth Ottensoser; Wolf Haldenstein Adler Freeman & Herz
LLP, by Daniel W. Krasner, Fred Taylor Isquith and Michael
Jaffe; Taylor, Gruver & McNew, by R. Bruce McNew; and
Greenfield & Rifkin LLP, by Mark Rifkin, for plaintiffs-
appellants.*

*Wyrick Robbins Yates & Ponton L.L.P., by Samuel T. Wyrick, III
and L. Diane Tindall, for defendants-appellees.*

WALKER, Judge.

In our review of the trial court's dismissal of this action pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), we must consider the allegations of the plaintiffs' complaint as true. *Arroyo v. Scottie's Professional Window Cleaning*, 120 N.C. App. 154, 155, 461 S.E.2d 13, 14 (1995), *disc. review improvidently allowed*, 343 N.C. 118, 468 S.E.2d 58 (1996). In this action, the plaintiffs are minority shareholders of the North Carolina Railroad Company (NCRR), a private corporation which began operation in 1856 and whose principal asset consists of 317 miles of continuous railroad line running from Charlotte to Morehead City, North Carolina. The defendants comprise the board of directors of NCRR.

In 1895, the State of North Carolina (the State) became the majority shareholder of NCRR when it acquired approximately 75% of the outstanding shares. Soon thereafter NCRR leased the 317 miles of railroad line, as well as other railroad properties, to the Southern Railway Company, now the Norfolk Southern Railway Company (Norfolk Southern), for a term of 99 years (the 1895 Lease). The 1895 Lease, which expired on 1 January 1995, called for semi-annual lease payments totaling approximately $600,000.00 per year.

In 1994, NCRR and Norfolk Southern began negotiating the renewal of the 1895 Lease. On 24 November 1994, the parties announced that they had agreed on the basic terms of the renewal, which called for an annual lease payment of $8,000,000.00. According to the plaintiffs, the proposed lease agreement (the 1995 Lease) resulted in "a ridiculously low return of 1.5% of the appraised value of NCRR's assets," and they alleged in their complaint:

> 36. The [1995 Lease] was, on its face, the product of collusive bargaining between the State and Norfolk Southern . . . through which the State achieved its objective of a below-market rental rate and paltry rate of return for NCRR and its shareholders in exchange for [Norfolk Southern's] willingness to maintain a low preferential rate structure which would support and stimulate business activity among Norfolk Southern's customers and generally within the region.

The plaintiffs assert that in response to the minority shareholders' negative reaction to the announcement, the directors of NCRR sent a letter to the shareholders on 22 November 1995 in which they assured them that the 1995 Lease was in the shareholders' best interest.

On 25 December 1995, a vote regarding the 1995 Lease was conducted at the annual NCRR shareholder meeting, and the 1995 Lease was approved. Subsequently, a challenge to the shareholder vote was initiated in the Federal District Court for the Eastern District of North Carolina on the basis that the required quorum of minority shareholders was not present at the 1995 annual meeting. On 30 July 1996, the district court found that NCRR had improperly counted a revoked proxy toward the required quorum amount and therefore enjoined NCRR from implementing the 1995 Lease.

On 26 August 1996, NCRR announced that the State had retained NationsBank as a financial advisor to assist it with the buyout of the minority shareholders. Thereafter, the board of directors of NCRR appointed a "special committee" to represent the minority shareholders' interests in negotiations with the State's proposed buyout. However, the plaintiffs contend that this alleged independent special committee is nothing more than a "sham committee" set up by the defendants which will ultimately result in "valu[ing] NCRR's assets at tens of millions of dollars below what they are really worth," such that the State will be able to purchase the minority shareholders' interests at an unfair price.

On 22 September 1996, the plaintiffs filed a complaint against the defendants. The defendants answered by filing a motion to dismiss the complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), which the trial court granted on 18 June 1997.[1]

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). This Court has summarized the trial court's duty in ruling upon such a motion as follows:

In order to withstand [a 12(b)(6) motion], the complaint must provide sufficient notice of the events and circumstances from which the claim arises, and must state allegations sufficient to satisfy the substantive elements of at least some recognized claim. The question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal

1. We note that the North Carolina General Assembly approved funding for a buyout of the minority shareholders in 1997, and this buyout was approved by the shareholders on 31 March 1998. However, rather than addressing whether the issue is now moot or the claims extinguished as a result of the shareholders' approval of the buyout, we choose to address the merits of the complaint.

theory, whether properly labeled or not. In general, "a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*"

*Id.* at 670-671, 355 S.E.2d at 840 (citations omitted).

The plaintiffs contend that when the defendants' attempts to renew the 1895 Lease at an inadequate price failed in 1996 due to the invalid shareholder vote, the defendants began discussing with the State the possibility of "squeezing out" the minority shareholders by instituting a cash merger where the State would purchase the outstanding shares owned by the minority shareholders. A cash merger, also known as a "freeze-out" or "squeeze-out" merger, occurs when the majority shareholders of a corporation attempt to gain control of the corporation by "cashing out" the shares of the minority shareholders. *See* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 24-5(b), at 495-496 (5th ed. 1995). The issue which arises in these situations is what remedies are available to shareholders who oppose such an action. *Id.*, § 24-9 at 500-503. In this regard, N.C. Gen. Stat. § 55-13-02(a), the appraisal statute, provides that a shareholder may dissent from a plan of merger proposed by the corporation or the majority shareholders and obtain the fair value of his shares. *See* N.C. Gen. Stat. § 55-13-02(a) (Cum. Supp. 1997).

However, it is important to note that this right to appraisal is the exclusive remedy for a shareholder who wishes to exercise a dissenter's rights, as N.C. Gen. Stat. § 55-13-02(b) explains:

A shareholder entitled to dissent and obtain payment for [the fair value of his/her] shares under this Article may not challenge the corporate action creating [this] entitlement, including without limitation a merger solely or partly in exchange for cash or other property, unless the action is unlawful or fraudulent with respect to the shareholder or the corporation.

N.C. Gen. Stat. § 55-13-02(b) (Cum. Supp. 1997). This provision is a change from the prior law. Previously, the appraisal remedy was "in addition to any other right [the shareholders] may have in law or in equity," whereas now the appraisal remedy is the exclusive remedy for dissatisfied shareholders unless they can show the transaction is "unlawful" or "fraudulent." *See* Amended N.C. Commentary § 55-13-02 (Cum. Supp. 1997); *see also* Robinson § 27-7 at 533.

WERNER v. ALEXANDER

[130 N.C. App. 435 (1998)]

Therefore, the critical issue in this type of case is how the "unlawful" and "fraudulent" exceptions to the rule will be applied. *See* Robinson § 27-7 at 534. The plaintiffs argue that the defendants have engaged in a course of conduct that is so procedurally unfair as to amount to unlawful or fraudulent conduct entitling them to a remedy broader than the statutorily prescribed appraisal. On the other hand, the defendants contend that the plaintiffs' claims are essentially about an inadequate buyout price cloaked in terms of fraud and unfair dealing.

Since our courts have not considered this issue, we look to other jurisdictions. In support of their claim, plaintiffs rely on the Delaware Supreme Court's decision in *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983). There, the court stated that in cases involving fraud or misrepresentation, the dissenting shareholders may be entitled to a remedy beyond the statutorily prescribed appraisal remedy. *Id.* at 714. However, the court also stated that, "in a suit challenging a cash-out merger [the dissenting shareholders] must allege specific acts of fraud, misrepresentation, or other items of misconduct to demonstrate the unfairness of the merger terms to the minority." *Id.* at 703. Furthermore, in a later case, the Delaware Supreme Court held that "a plaintiff's mere allegation of 'unfair dealing,' without more, cannot survive a motion to dismiss [unless the averments contain] 'specific acts of fraud, misrepresentation, or other items of misconduct'. . . ." *Rabkin v. Philip A. Hunt Chemical Corp.*, 498 A.2d 1099, 1105 (Del. 1985).

This Court reached a similar conclusion in *IRA ex rel. Oppenheimer v. Brenner Companies, Inc.*, 107 N.C. App. 16, 419 S.E.2d 354, *disc. review denied*, 332 N.C. 666, 424 S.E.2d 401 (1992). In that case, a group of dissenting minority shareholders filed suit against a corporation and its directors contesting the forced sale of their stock in connection with a cash merger. The plaintiffs alleged claims of unfairness, breach of fiduciary duty, fraud and constructive fraud on behalf of the directors, and complained that the price to be paid for their shares was "ridiculously low." *Id.* at 18, 419 S.E.2d at 356. In addressing the issue of fraud, this Court first noted that the elements of fraud are (1) a false representation or concealment of a material fact, (2) which is reasonably calculated to deceive, (3) made with an intent to deceive, (4) which does in fact deceive another party, and (5) results in damage to the injured party. *Id.* at 24, 419 S.E.2d at 359.

The Court then cited with approval the case of *Schloss Associates v. C&ORY*, 536 A.2d 147 (Md. Ct. Spec. App. 1988), where the Maryland court held that the minority shareholders' allegations of fraud were entirely too general and dismissed the complaint. The court concluded the dispute over the terms of merger and how the price offered for shares was determined could be resolved through the statutory appraisal process. *Id.* at 158.

Finally, in affirming a judgment for the defendants, the *Oppenheimer* Court stated:

> [Although] a statutory appraisal remedy "may not be adequate . . . in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved[,]" . . . a "remedy beyond the statutory procedure is not available where the shareholder's objection is essentially a complaint regarding the price which he received for his shares."

*IRA ex rel. Oppenheimer v. Brenner Companies, Inc.*, 107 N.C. App. at 20-21, 419 S.E.2d at 357-358.

Here, the plaintiffs' allegations have similarities to those in *Oppenheimer*, and include the following:

> 3. Having failed to gain shareholder approval for the lease extension, defendants are now attempting to freeze out NCRR's minority shareholders . . . [and] are seeking to purchase the outstanding shares of NCRR not owned by the State, *without putting into place any procedures or safeguards to insulate against the majority shareholder's pecuniary interest in paying the lowest possible price . . . .*

> . . .

> 5. [T]he directors who comprise the "special committee" suffer from disabling conflicts of interest in that their desire to remain entrenched in their positions of control at NCRR and receive the substantial benefits that result from those positions *are in direct conflict with their obligation to maximize shareholder value and secure fair value for NCRR's minority shareholders. . . .*

> . . .

> 8 *[I]n an effort to freeze out NCRR's minority shareholders at an inadequate price,* the consideration to be paid to NCRR's

minority shareholders to effectuate the coercive transaction will be based on a flawed valuation of NCRR . . . .

. . .

10. *By freezing out these minority shareholders at an unfair and inadequate price*, defendants endeavor to finally execute the inadequate lease agreement with Norfolk Southern so that the controlling shareholder of NCRR—the State of North Carolina— can advance its own economic agenda, at minimal cost. . . .

(Emphasis added).

All of these allegations point to one central theme, the plaintiffs feel the defendants have intentionally engaged in a course of conduct designed to reduce the value of NCRR's assets, which in turn will reduce the value of their shares, thereby enabling these shares to be purchased at a reduced price. However, as this Court has stated, "inadequate price alone will not support a claim for fraud." *See IRA ex rel. Oppenheimer v. Brenner Companies, Inc.*, 107 N.C. App. at 24, 419 S.E.2d at 359. While the plaintiffs have a legitimate concern that the defendants act in such a way as to maximize shareholder value, their complaint fails to demonstrate how the defendants' conduct amounted to a false representation or concealment of a material fact, reasonably calculated and intentionally made to deceive the plaintiffs, which in fact did deceive the plaintiffs to their detriment.

In conclusion, since the plaintiffs have failed to plead with particularity circumstances constituting unlawful or fraudulent conduct by the defendants, the trial court did not err by granting the defendants' Rule 12(b)(6) motion to dismiss. *See* N.C.R. Civ. P. 9(b).

Affirmed.

Judges WYNN and MARTIN, John C., concur.