Mark A. **KRIEGER**, Plaintiff,

v.

Warren E. **GAST**, et al., Defendants.

No. 4:99–CV–86.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 18, 2000.

Thomas A. Baird, White, Przybylowicz, Schneider & Baird, PC, Okemos, Charles R. Watkins, Robert J. Emanuel, Susman & Watkins, Chicago, IL, for Mark A. Krieger, individually and on behalf of all others similarly situated, pltfs.

Jon R. Muth, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Anne N. De-Prez, Karoline W. Jackson, Barnes & Thornburg, Indianapolis, IN, Kevin Abraham Rynbrandt, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, Kevin J. O'Brien, Butler, Rubin, Saltarelli & Boyd, Chicago, IL, for Warren E. Gast, William E. Johnson, Kevin C. Gast, Jay

Van Den Berg, Marcella Schalon, Allan Westmaas, Gast Manufacturing Corporation, Gast Investment Corporation, Mcdonald & Company Securities, Incorporated, Mcdonald & Company Investments, Inc., defts.

## OPINION

QUIST, District Judge.

The Court has before it the parties' briefs regarding certain legal issues which the parties characterize as both "disputed" and "controlling." The Court ordered the parties to brief these issues after receiving a joint request from the parties to rule on them. Although the briefs are not submitted in support of any particular motion, the Court believes it appropriate to address the issues as if presented on cross motions for partial summary judgment under Fed.R.Civ.P. 56.

### Facts [1]

A fairly exhaustive statement of facts is set forth in the Court's prior Opinion regarding Defendants' motions to dismiss. Here, the Court will only briefly recount the facts necessary to explain the context of the disputed legal issues.

On August 21, 1996, a special meeting of the shareholders of Defendant Gast Manufacturing Corporation ("Gast") was held for the purpose of voting on a proposed plan of merger under which Gast Investment Corporation ("GIC") would be merged into Gast, leaving Gast as the surviving corporation (the "Merger"). Defendants Warren E. Gast, William E. Johnson, Kevin C. Gast, Jay Van Den Berg, and Allan Westmaas (the "Inside Group"), who were directors, officers, and controlling shareholders of Gast, and others formed GIC as a means of eliminating the minority shareholders' ownership in Gast. After forming GIC, the Inside Group and others transferred all of their Gast stock to GIC, leaving GIC as the majority share-

holder of Gast. Under the plan of merger, the Gast minority shareholders' shares of common stock were to be converted into the right to receive $140 per share of common stock and $10 per share of preferred stock. The Merger was approved following a shareholder vote.

By resolution, Gast's board of directors granted the minority shareholders the right to an appraisal of the value of their shares. Plaintiff, Mark Krieger ("Krieger"), who at the time owned 500 shares of Gast common stock, attended the meeting and voted against the Merger. However, Krieger did not exercise his right to an appraisal.

In connection with the Merger, a notice ("Notice") signed by Warren Gast and approved by the Gast board of directors was sent to Gast shareholders informing them of the details of the Merger. The Notice informed the shareholders that GIC would vote its shares in favor of the Merger and that the minority shareholders would receive cash in the amounts noted above for their shares. In addition, the Notice informed shareholders that following the Merger, the Inside Group and other continuing shareholders would sell to Gast 325,533 shares of common stock for $140 per share and that RDV Corporation would purchase a 49% interest in Gast for $4.2 million plus a loan of $4.2 million.

In January of 1998, the continuing shareholders sold Gast to IDEX Corporation and received in excess of $300 per share—over twice the amount paid to the minority shareholders in connection with the Merger. Krieger, sensing that he and the other minority shareholder were not treated fairly by the Inside Group, filed this lawsuit alleging fraud, breach of fiduciary duty, and other state law claims. The central focus of Krieger's claims is the Notice. Krieger contends that the Notice was misleading because it contained misrepresentations and did not disclose ade-

1. For purposes of this Opinion, the Court will treat the facts set forth below as undisputed as the parties do not dispute these facts as they relate to the issues before the Court.

quate information. In particular, Krieger alleges that, among other things, the Notice did not inform shareholders of the Inside Group's plans to either sell Gast or take it public following the Merger as part of an "exit strategy" for Warren Gast and his family, did not reveal Gast's true value and the basis for the $140 per share, and did not state that the actual price of the shares purchased by RDV was $280 per share rather than $140 per share.

### Discussion

Two issues are raised by the parties in their briefs: (1) whether Michigan's appraisal statute, M.C.L. § 450.1762, which gives shareholders the right to dissent and obtain payment for their shares in certain situations, applies in this case; and (2) whether Krieger has the affirmative burden of proving fraud or unlawfulness or whether Defendants have the burden of proving the "entire fairness" of the transaction. If the answer to issue 1 is "yes", then the Court must address the sub-issue of whether Krieger's claims come within the "unlawful or fraudulent" exception under the appraisal statute.

### 1.   Does the Appraisal Statute Apply?

■ The relevant provisions of the appraisal statute are as follows:

(1) A shareholder is entitled to dissent from, and obtain payment of the fair value of his or her shares in the event of, any of the following corporate actions:

(a) Consummation of a plan of merger to which the corporation is a party if shareholder approval is required for the merger by section 703a or 736(5) or the articles of incorporation and the shareholder is entitled to vote on the merger, or the corporation is a subsidiary that is merged with its parent under section 711.

\*      \*      \*      \*      \*      \*

(f) Any corporate action taken pursuant to a shareholder vote to the extent the articles of incorporation, bylaws, or a resolution of the board provides that voting or nonvoting shareholders are entitled to dissent and obtain payment for their shares.

\*      \*      \*      \*      \*      \*

(2) Unless otherwise provided in the articles of incorporation, bylaws, or a resolution of the board, a shareholder may not dissent from any of the following:

\*      \*      \*      \*      \*      \*

(b) A transaction described in subsection (1)(a) in which shareholders receive cash or shares that satisfy the requirements of subdivision (a) on the effective date of the merger or any combination thereof.

\*      \*      \*      \*      \*      \*

(3) A shareholder entitled to dissent and obtain payment for his or her shares pursuant to subsection (1)(a) to (e) may not challenge the corporate action creating his or her entitlement unless the action is unlawful or fraudulent with respect to the shareholder or the corporation.

(4) A shareholder who exercises his or her right to dissent and seek payment for his or shares pursuant to subsection (1)(f) may not challenge the corporate action creating his or her entitlement unless the action is unlawful or fraudulent with respect to the shareholder or the corporation.

M.C.L. § 450.1762.

■ Judicial interpretation of a statute is required only if the language used is ambiguous. *See Rowell v. Security Steel Processing Co.,* 445 Mich. 347, 353, 518 N.W.2d 409, 411 (1994). If the language used is susceptible to more than one interpretation, a court must attempt to give effect to the legislature's intent. *See id.* at 353–54, 518 N.W.2d at 412. The words and phrases in a statute should be interpreted in their ordinary sense, taking into account how the statute is arranged. *See People v. Griffin,* 235 Mich.App. 27, 32, 597 N.W.2d 176, 180 (1999). In addition, the

statute must be construed in a manner that gives effect to all of its parts. *See Moore v. Fennville Pub. Schs. Bd. of Educ.*, 223 Mich.App. 196, 202, 566 N.W.2d 31, 34 (1997)(per curiam).

The initial issue is whether Krieger's claims are subject to § 450.1762(3), which, in the absence or fraud or "unlawful" conduct, renders appraisal a shareholder's exclusive remedy whether or not the shareholder actually exercises the right to an appraisal, or § 450.1762(4), which restricts a shareholder's remedy to an appraisal in the absence of fraud or "unlawful" conduct only if the shareholder actually exercises the appraisal right. Krieger argues that subsection (4) applies based upon the following argument: (i) the minority shareholders were automatically entitled to an appraisal under subsection (1)(a) (providing dissenter's rights for mergers); (ii) because the minority shareholders received cash for their shares, the cash exception under subsection (2)(b) negated their appraisal rights under subsection (1)(a); (iii) although appraisal rights were not available under subsection (1)(a) (due to the cash exception in subsection (2)(b)), the board of directors granted appraisal rights by resolution pursuant to subsection (1)(f); and (iv) because Krieger's appraisal rights arose under section (1)(f), subsection (4) applies and appraisal was Krieger's exclusive remedy only if Krieger exercised such rights—which he did not. Defendants argue that subsection (3) applies to Krieger's claims based upon the following rationale: (i) Krieger was granted appraisal rights pursuant to subsection (1)(a); (ii) although the cash exception in subsection (2)(b) would have otherwise applied, Gast's board of directors overrode the exception in accordance with the introductory clause in subsection (2), negating the cash exception; and (iii) because Krieger's appraisal rights arose under subsection (1)(a), subsection (3) applies, making appraisal Krieger's exclusive remedy in the absence of fraud or "unlawful" conduct.

Having thoroughly reviewed § 450.1762, the Court finds the statute ambiguous. Both parties offer different interpretations of how the statute should be applied based on a reasonable construction of the language used by the legislature. However, the Court agrees with Defendants' interpretation. The key to understanding the statute is to keep in mind the function of each subsection. Subsection (1) identifies several specific instances in which appraisal rights arise automatically because of the nature of the corporate transaction or event. Subsection 1(f) does not address any specific transaction or event, but rather comes into play only when the articles of incorporation, bylaws, or a board of directors resolution grants appraisal rights if a shareholder vote is required to authorize corporate action. Subsection (2) negates appraisal rights arising in certain instances under subsection (1), including those arising in connection with a merger under subsection 1(a), if shareholders receive cash for their shares. However, a corporation may override the exceptions in subsection (2) if its articles of incorporation, bylaws, or a board resolution grants shareholders appraisal rights in the situations specified in subsection (2). If appraisal rights are granted by such means, the result is that subsection (2) does not apply at all, and the shareholders have the rights originally granted under subsection (1). Thus, in this case, had the board of directors not authorized appraisal rights by resolution, Krieger and the minority shareholders would not be entitled to appraisal rights by virtue of subsection (2)(b). The board negated that exception by its resolution so that the rights under subsection (1)(a) continued in effect and Krieger did not gain any new or additional rights under subsection (1)(f).

The problem with Krieger's interpretation of the statute is that it renders the introductory language in subsection (2) superfluous. Under Krieger's interpretation, the introductory language in subsection (2) would serve no purpose because a

resolution passed pursuant to subsection (1)(f) would always override the exceptions in subsection (2), leaving no reason for the limiting language in subsection (2). However, if subsection (1)(f) is construed as a "catch-all" provision for corporate transactions not specifically addressed in subsections (1)(a)-(e), the introductory language in subsection (2) is given meaning and effect by allowing a corporation to override the cash exception in subsection (2) and preserve appraisal rights granted under subsection (1)(a).(e).

Neither party has cited any case addressing § 450.1762 nor has the Court found any authority through its own research. Nonetheless, the Court's interpretation is consistent with the analysis of commentators who helped draft the 1989 revisions to the Michigan Business Corporation Act ("MBCA"), which created § 450.1762. *See* Stephen H. Schulman, et al., *Michigan Corporation Law & Practice* § 7.18 at 275 (2000 supp.)(hereafter "MCL & P"). The authors state:

> In contrast to the pre–1989 Amendments version of the Act, which apparently triggered the statutory exclusivity provision only when the right to dissent was exercised, the Act now clearly provides that the mere entitlement to dissent from the above-described transactions under the statute suffices to limit the shareholder's right to sue. *Even in instances where a transaction is appraisal-generating but a statutory exception to the availability of the remedy exists (for example, a merger in which the consideration is all cash), the exclusivity provision may still come into play. If, as the Act permits, the articles, bylaws, or a board resolution overrides the exception and thereby makes appraisal available, exclusivity will apply exactly as if the exception never existed.*

*Id.* (footnotes omitted)(emphasis added). If, as those authors point out, the board of directors adopts a resolution creating appraisal rights in a merger in which cash is the consideration, the effect is that the exception is negated and appraisal rights arise pursuant to subsection 1(a). Because that is the case here, subsection (3) applies and Krieger must show that the Merger was "unlawful or fraudulent" in order to succeed.

**2. Do Krieger's Claims Fall Within the "Unlawful or Fraudulent" Exception?**

■ Having determined that Krieger must show that the Merger was "unlawful or fraudulent," the Court must now decide whether Krieger's claims fall within the "unlawful or fraudulent" exception. In addressing this issue, the Court finds it appropriate to examine the purpose served by appraisal statutes such as the one at issue.

> The rule under the common law required the unanimous consent of stockholders to carry out major corporate transactions, such as a merger or consolidation of the corporation, or a sale of all or substantially all of its assets. This rule permitted a minority of stockholders to block effectively the implementation of those decisions or policies which while conceivably beneficial to the corporation in some cases, and while so recognized by the majority stockholders, were not to the liking of the remaining few. To forestall the minority from thus exercising what may be a tyrannical hold upon the corporation, and at the same time to protect their interests in the organization, many states have enacted statutes under which less than an absolute majority of the stockholders can approve major decisions and policies, and which authorize dissenters to demand payment for their shares. Such statutes are an obvious modification or abrogation of the common law, under which no appraisal rights were available.

18A Am.Jur.2d *Corporations* § 805 (1985); *see also Rosenstein v. CMC Real Estate Corp.*, 168 Ill.App.3d 92, 118 Ill.Dec. 766, 522 N.E.2d 221, 224 (1988).

Michigan's current appraisal provisions, adopted in 1989 as part of major amendments to the MBCA, are based on the 1984 version of the Revised Model Business Corporation Act ("Model Act"). Pursuant to those provisions, a shareholder entitled to dissent under M.C.L. § 450.1762 is entitled to the "fair value" of his shares of stock, which is defined as "the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable." M.C.L. § 450.1761(d). A shareholder who elects to dissent and seek payment for his shares must demand payment and deposit his shares with the corporation. *See* M.C.L. § 450.1767(1). Upon receipt of the demand for payment and tendered shares, the corporation must pay the shareholder the estimated fair value of the shares plus accrued interest and must provide certain financial information to the shareholder. *See* M.C.L. § 450.1769. If the shareholder disagrees with the amount tendered, he may submit his own estimate of fair value to the corporation and demand payment. *See* M.C.L. § 450.1772(1). If the parties cannot agree on fair value, the corporation must commence a proceeding in the circuit court within 60 days after receipt of the payment demand, petitioning the court to determine the fair value accrued interest. *See* M.C.L. § 450.1773. The circuit court may appoint a referee to conduct a hearing and make proposed findings of fact, conclusions of law, and a recommended judgment. *See* M.C.L. § 450.1773a.

No court has interpreted the breadth of the exclusivity provision under M.C.L. § 450.1762 or discussed the circumstances falling within the exception for fraudulent or unlawful action.[2] Krieger contends that the Court should look to Delaware law, which allows minority shareholders to maintain equitable actions for breach of fiduciary duty even if appraisal rights are available. Defendants, on the other hand, rely on decisions from other states construing appraisal statutes with similar exclusivity provisions in support of their contention that Krieger's claims really present nothing more than a dispute over price—a proper subject of an appraisal proceeding. Professor Shulman and his colleagues note:

> The comment to the portion of the Model Act from which the exclusivity provision ... was drawn suggests that the existence of the appraisal remedy still leaves a role for judicial intervention. In discussing the provision authorizing suit for fraudulent or illegal actions, the comment states, "If the corporation attempts an action in violation of the corporation law on voting, in violation of clauses in articles of incorporation prohibiting it, by deception of shareholders, or in violation of a fiduciary duty—to take some examples—the court's freedom to intervene should be unaffected by the presence or absence of dissenters' rights under this chapter." The comment then cites *Weinberger v. UOP, Inc.* for the proposition that the "appraisal remedy may not be adequate 'where fraud, misrepresentation, self dealing, deliberate waste or corporate assets, or gross or palpable overreaching are involved.'"

MCL & P § 7.18, at 275–76.

In *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del.1983), the Delaware Supreme Court set forth a number of principles applicable to minority shareholder rights

---

**2.** *Porter v. C.O. Porter Mach. Co.*, 336 Mich. 437, 58 N.W.2d 135 (1953)(en banc),. held under the prior dissenters rights statute that appraisal was the exclusive remedy for minority shareholders who objected to a sale of the assets and business of one corporation to a newly formed corporation. *See Porter*, 336 Mich. at 455–56, 58 N.W.2d at 137. While the court did observe that "a different question would be presented" had the plaintiffs shown "any fraud or lack of good faith," *id.* at 456, 58 N.W.2d at 137, nothing in the court's opinion indicates how it would have resolved the question.

in cash-out merger situations. In that case, The Signal Companies, Inc., the holder of 50.5% of the outstanding shares of UOP, Inc., sought to acquire complete control of UOP through a cash out merger. Prior to the merger, two members of Signal's board, who were also members of UOP's board, prepared a feasibility study in which they concluded that Signal should acquire the remaining shares of UOP at any price up to $24 per share. In spite of the conclusion of the feasibility study, Signal's executive committee ultimately authorized its management to negotiate with UOP for an acquisition of the remaining UOP shares at a price of $21 per share, the price Signal paid several years earlier when it acquired its 50.5% interest by tender offer. Only four business days passed between the time Signal announced that it was engaged in negotiations with UOP to acquire the remaining UOP stock and the meeting between the boards of Signal and UOP to consider the proposed merger. During that time, UOP's president, who was also a director of Signal, retained an investment banker to render a fairness opinion on the $21 per share price. At the meeting between the two boards, the UOP board members were presented copies of the merger agreement, UOP's financial statements and data, and the fairness opinion. However, the feasibility study was not presented to the non-Signal directors. After a period of discussion, Signal's representatives left the room to allow the non-Signal UOP directors to discuss the proposal. At the conclusion of the discussion, UOP's non-Signal directors voted to accept Signal's proposal.

The court reversed the chancellor's decision that the terms of the merger were fair to the plaintiff and the minority shareholders, primarily because the feasibility study prepared by Signal indicating that shares should be purchased up to $24 was not disclosed to the outside UOP directors or the minority shareholders. *See Weinberger*, 457 A.2d at 708. Because the study was prepared by Signal with information obtained from UOP for Signal's

use, the court found that it "was a matter of material significance to UOP and its shareholders." *Id.* at 709. In addition, the court found that the merger did not meet the requirement of fairness, as indicated by Signal's failure to disclose the results of the feasibility study and the lack of any effort to structure the transaction as an arms length transaction. Specifically, the court observed that the transaction was in fact one-sided because there were no real negotiations regarding share price and the timing and structure of the transaction were totally dictated by Signal. *See id.* at 711.

Although the *Weinberger* court permitted the plaintiff to proceed outside the appraisal process, *Weinberger* has as much to say about when a minority shareholder is relegated to the appraisal process as it does about when a cash out merger must satisfy the fairness requirement. *Weinberger* sets forth the following principles with regard to the issues at hand:

1. The appraisal process is a minority shareholder's exclusive remedy for obtaining fair value for his or her shares (using the more liberal approach to valuation adopted in *Weinberger*). However, where "fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved," a court may grant equitable relief including, where appropriate, monetary damages. *See id.* at 703, 714.

2. Where a minority shareholder "allege[s] specific acts of fraud, misrepresentation, or other items of misconduct [ ] demonstrat[ing] the unfairness of the merger terms to the minority," the majority shareholder has the burden of proving that the transaction is fair, although the plaintiff has the initial burden of demonstrating facts providing a basis for invoking the fairness obligation. *Id.* at 703.

3. Where the corporate action has been approved by a majority of the minority shareholders, the burden shifts to the plaintiff to show that the transaction was unfair to the minority shareholders. However, the majority shareholder retains the burden of demonstrating full disclosure of all material facts to the minority shareholders. *See id.*

4. "The concept of fairness has two basic aspects: fair dealing and fair price. The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. The latter aspect of fairness relates to the economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock. However, the test for fairness is not a bifurcated one as between fair dealing and price. All aspects must be considered as a whole since the question is one of entire fairness." *Id.* at 711.[3]

Having reviewed many of the cases cited by Defendants, this Court does not believe that there is a significant difference between the scope of the appraisal remedy under Delaware law and the law of other states, because most states, even those whose statutes expressly provide that the appraisal remedy is exclusive, recognize an exception at least for fraud, and in many cases "unlawful" action. *Walter J. Schloss Associates v. Chesapeake and Ohio Railway Co.,* 73 Md.App. 727, 536 A.2d 147 (1988), a case cited by Defendants, consid-ered whether appraisal rights under Maryland law were exclusive or non-exclusive. Incidentally, the Maryland appraisal statute did not expressly state that appraisal rights were a minority shareholder's exclusive remedy. The plaintiffs in that case owned shares of stock in the Baltimore & Ohio Railroad Company ("B & O"). The controlling shareholder, Chesapeake and Ohio Railway Company ("C & O"), caused B & O to merge into C & O. As a result of the merger, the minority shareholders were eliminated and received an offer of $124 per share for their shares. The minority shareholders filed suit, alleging that: (1) in years past the B & O directors had declared $8 annual dividends and had taken an extraordinary charge against earnings; (2) the $124 price offered was too low; and (3) there were deficiencies in the fairness opinion rendered by Morgan Stanley. Drawing on non-merger cases under Maryland law, the court stated that "the right to receive fair value does not necessarily preclude other relief ...." *Walter J. Schloss,* 73 Md.App. at 740, 536 A.2d at 154. In addition, after examining *Weinberger* and other Delaware cases, the court observed, "[a]s to whether, and under what circumstances, a monetary remedy apart from payment of fair value and the statutory appraisal process is available, there does not seem to be a great deal of difference between established Maryland law and the principles enunciated in Weinberger ...." *Id.* at 747, 536 A.2d 147, 536 A.2d at 157. Nonetheless, the court held that the plaintiffs' allegations (regarding the amount offered and the Morgan Stanley fairness opinion) did not support relief beyond an appraisal, stating, "[w]hat we have then is essentially a complaint over price—the amount and how it was established—for which the statutory appraisal

---

**3.** The *Weinberger* court also dispensed with the valid business purpose requirement adopted in *Singer v. Magnavox Co.,* 380 A.2d 969 (1977), noting that the fairness test and expanded appraisal remedy provided sufficient protection to minority investors in a cash-out merger. This Court has found no case law or indication in the MBCA that a valid business purpose is required for mergers under Michigan law. Krieger's allegations, however, indicate that he is not attacking the merger on that ground.

right is a wholly adequate remedy." *Id.* at 748, 536 A.2d 147, 536 A.2d at 158.

The Ohio Supreme Court addressed Ohio's appraisal statute in *Stepak v. Schey,* 51 Ohio St.3d 8, 553 N.E.2d 1072 (1990). The issue in that case was whether a minority shareholder may maintain an action for breach of fiduciary duty in addition to an action under Ohio's appraisal statute. The court held that a minority shareholder may maintain a breach of fiduciary duty claim in addition to an appraisal proceeding so long as "such action [does] not seek to overturn or modify the fair cash value determined in a cash-out merger." In a previous decision, *Armstrong v. Marathon Oil Co.,* 32 Ohio St.3d 397, 513 N.E.2d 776 (1987), the court held that the appraisal statute was the exclusive means for determining the value of a dissenter's shares, but noted that such exclusivity did not necessarily bar other types of claims:

> [T]he statutory proceeding under R.C. 1701.85 is the sole means for determining the value of a dissenter's shares in the present case. However, this is not to say that causes of action which seek compensation other than the value of a dissenter's shares of stock are not maintainable. Provable injury under whatever theory utilized is compensable so long as it does not seek to overturn or modify the fair cash value determined. Such theory may not, however, be joined to the R.C. 1701.85 proceeding, but is a separate cause of action subject to the applicable statute of limitations and res judicata.

*Armstrong,* 32 Ohio St.3d at 422, 513 N.E.2d at 798. Reaffirming its decision in *Armstrong,* the *Stepak* court held that an action for breach of fiduciary duty may be brought outside the appraisal statute. However, the *Stepak* court held that the plaintiff's claim that the directors of the corporation failed to obtain the highest price possible was, in essence, a challenge to the price paid for the shares which should have been brought in an appraisal

proceeding. *See Stepak,* 51 Ohio St.3d at 11, 553 N.E.2d at 1075.

In *Rosenstein v. CMC Real Estate Corp.,* 168 Ill.App.3d 92, 118 Ill.Dec. 766, 522 N.E.2d 221 (1988), the Illinois Court of Appeals stated that "in the absence of fraud or other illegality occurring prior to the merger, the [Wisconsin] appraisal provision ... provides the exclusive remedy for minority shareholders who claim that a merger was effectuated without corporate purpose and with the intent of freezing them out." *Rosenstein,* 168 Ill.App.3d at 97, 522 N.E.2d at 225 (citing *Weinberger,* among other cases, for the proposition that the appraisal statute provides the exclusive remedy to determine share price). The court found that appraisal was the plaintiffs' exclusive remedy because there were no allegations of fraud or illegal conduct, but rather, only allegations of inadequate price. In analyzing the issue, the court distinguished the Seventh Circuit's decision in *Kademian v. Ladish Co.,* 792 F.2d 614 (7th Cir.1986). In *Kademian,* certain minority shareholders of Ladish Company, including several former Ladish vice-presidents, sued Ladish and other defendants who owned a majority interest in Ladish. The plaintiffs alleged that two shareholders who controlled the company through charitable organizations sought to manipulate the stock price by keeping the price far less than its actual value. Seeking to increase the return on their investments, the vice-presidents sought out potential merger partners and eventually located ACF Industries. However, Braun, the chairman of the board who controlled a substantial number of shares, misrepresented the terms of ACF's merger proposal to Ladish's board and told ACF that any purchase of ACF stock would be considered an unfriendly act. ACF proceeded to purchase the vice-presidents' stock. At that point, Braun sought out another merger partner, Armco, in an effort to hide the details of his prior stock manipulations. Armco offered approximately $2100 per share, while ACF increased its price to as high as $3,200 per share. Ulti-

mately, the Ladish board and a majority of the Ladish shareholders approved the merger with Armco. The plaintiffs sued, alleging federal securities law violations and state law claims for breach of fiduciary duty. The district court dismissed all claims. In particular, the district court found that the Wisconsin appraisal statute provided the exclusive remedy with regard to the state law claims. On appeal, the Seventh Circuit affirmed the dismissal of the securities laws claims but reversed on the state law claims. The court stated:

> [I]n the usual case, a shareholder is bound by a corporate action, with only a right to claim the fair value of his shares. Even if he believes the action to be unwise or unfair, appraisal protects him from pecuniary loss, and he should not be allowed to frustrate the majority's goal by second-guessing its business judgment. But the prospect that all shareholders will be paid off does not justify the corporation or its officers in acting unlawfully. The appraisal remedy cannot substitute for a suit for breach of fiduciary duty or other torts. This was recognized even in *Yanow v. Teal Industries, Inc.*, 178 Conn. 262, 422 A.2d 311 (1979), one of the cases upon which both the district court and defendants rely. There the plaintiff's claims respecting the merger itself (*i.e.*, that it had been effectuated without corporate purpose and with the intent to freeze him out) were held barred by the appraisal remedy, 422 A.2d at 320–21, but his claims of fiduciary breach antecedent to the merger were not, *id.* at 321. This, we believe, is the most reasonable approach and the one the Wisconsin courts would take. . . .

*Kademian*, 792 F.2d at 630.

In *Sifferle v. Micom Corp.*, 384 N.W.2d 503 (Minn.Ct.App.1986), the Minnesota Court of Appeals held that the Minnesota appraisal statute does not permit "an equitable action challenging the 'entire fairness' of a freeze-out merger as is permitted under Delaware law." *Sifferle*, 384

N.W.2d at 507. However, the court also held that "if a complaint pleads with specificity that a merger was carried out through deception, misrepresentation, actual fraud, or in violation of applicable statutes or articles of incorporation, or in violation of a fiduciary duty, it should not be dismissed for failure to state a claim." The Minnesota statute, which provided an exception only for "fraudulent" action, was narrower than Michigan's statute, which provides an exception for "unlawful or fraudulent" action.

The North Carolina Court of Appeals considered the scope of exclusivity under North Carolina's appraisal statute in *Werner v. Alexander*, 130 N.C.App. 435, 502 S.E.2d 897 (1998). The North Carolina statute, like Michigan's statute, contained an exception to exclusivity for "action [that] is unlawful or fraudulent . . . ." *Werner*, 130 N.C.App. at 438, 502 S.E.2d at 900. Although the court held that the appraisal statute provides a dissenting shareholder's exclusive remedy where the value of the dissenter's shares is at issue, the court also observed that, as in *Weinberger*, appraisal may not be adequate in cases involving fraud, misrepresentation, self dealing, or gross overreaching. *See id.* at 439–40, 502 S.E.2d 897, 502 S.E.2d at 900–01.

■■ Based on the foregoing cases, the Court concludes that the Michigan appraisal statute provides the exclusive means of assessing the fair value of a minority shareholder's shares in a cash-out merger, except in instances where fraud or other unlawful action, such as self-dealing, deliberate waste of corporate assets, or breach of fiduciary duty, is alleged. However, a shareholder may not avoid the appraisal remedy with "mere allegation[s] of 'unfair dealing,' " but rather must plead " 'specific acts of fraud, misrepresentation, or other items of misconduct' " in order to state a claim. *Rabkin v. Philip A. Hunt Chem. Corp.*, 498 A.2d 1099, 1105 (1985)(quoting *Weinberger*, 457 A.2d at 703, 711, 714). Furthermore, a claim

should be dismissed where it is simply "a complaint over price—the amount and how it was established—for which the statutory appraisal is a wholly adequate remedy." *Walter J. Schloss,* 73 Md.App. at 748, 536 A.2d at 158; *see also Rabkin,* 498 A.2d at 1107–08 ("A balance must be struck between sustaining complaints averring faithless acts, which taken as true would constitute breaches of fiduciary duties that are reasonably related to and have a substantial impact upon the price offered, and properly dismissing those allegations questioning judgmental factors of valuation"); *Stepak v. Scharffenberger,* No. 6530, 1985 WL 11579, at *3 (Del.Ch. Aug.9, 1985)(concluding that the complaint failed to plead any facts demonstrating the inadequacy of appraisal). Thus, the Court must examine the allegations of the complaint to determine whether Krieger's claims are really concerned with the adequacy of share price or whether they go beyond price and allege a claim based upon wrongful conduct.

■ The thrust of Krieger's complaint is that Defendants conceived and implemented a plan "to wrongfully acquire the [minority shareholders'] Gast shares for and [sic] unfairly low price before the Class found out what Gast was really worth and what the Inside Group was planning." (Compl.¶ 33(e); *see also id.* ¶ 1 ("the defendants engaged in a concert of action, joint-venture and conspiracy to squeeze [the minority shareholders] out via the Merger for a fraction of the real value of their Gast shares"); ¶ 36 ("Pursuant to the Wrongful Plan, all of the defendants aided and abetted each other, acted as joint venturers and conspired to engage in the squeeze-out in order to deprive plaintiff and the Class of the fair value of their Gast shares"); ¶ 50 ("As contemplated by the Wrongful Plan, the net result of the Merger was that the proportionate share of the 'book' or asset valuation of Gast was transferred to Gast's minority shareholders, but the 'going concern value of Gast was transferred 51% to Gast's

existing, majority shareholders, with the remaining 49% sold to RDV ARIA"); ¶ 53 ("All defendants knew or should have known, or, as fiduciaries, had a duty to know, that Gast was worth far more than $140 per common share at the time of the Merger").) Consistent with that claim, Krieger alleges in Count I that Defendants breached their fiduciary duties because the $140 per share merger price was "grossly inadequate and an unfair value to place on Gast common stock" and because Defendants "caus[ed] plaintiff and the Class to be paid an amount for their Gast stock which was grossly unfair and greatly below the true value of that stock ...." (*Id.* ¶¶ 61, 62.) By themselves, these allegations indicate nothing more than a disagreement as to price, for which appraisal is the exclusive remedy. However, while Krieger's ultimate claim is that he received an inadequate price, he alleges that Defendants induced Krieger and the minority shareholders to accept the Merger price offered for their shares and forego their appraisal rights by issuing the Notice, which contained misleading statements and omissions. These allegations distinguish this case from *Stringer v. Car Data Systems, Inc.,* 314 Or. 576, 841 P.2d 1183 (1992)(en banc), cited by Defendants, in which the plaintiff minority shareholders alleged that the defendants breached their duties of loyalty, good faith, fair dealing, and full disclosure, by paying an amount that was unreasonably low. *See Stringer,* 314 Or. at 585–88, 841 P.2d at 1188–89. The *Stringer* plaintiffs did not allege that the defendants had made any misrepresentation or omission and the corporation actually initiated an appraisal proceeding. Similarly, the plaintiffs' allegations in *Werner* were that the majority shareholders were attempting to freeze out the minority at the lowest possible price, that the special committee appointed to represent the minority shareholders had conflicts of interest, and that the price to be paid was based on a flawed valuation. *See Werner,* 130 N.C.App. at 440, 502 S.E.2d at 901. Although cloaked in terms of fraud, the

plaintiffs' allegations failed to show "how the defendants' conduct amounted to a false representation or concealment of a material fact, reasonably calculated and intentionally made to deceive the plaintiffs, which in fact did deceive the plaintiffs to their detriment." *Id.* at 441, 502 S.E.2d at 901.

The question that remains is whether the alleged misrepresentations or omissions give rise to a claim other than a dispute over price. The alleged misrepresentations are set forth in paragraphs 41 through 45 of the complaint. Paragraphs 41 through 43 state that the Notice contained the date of the shareholders meeting to approve the Merger, the percentage of GIC's ownership in Gast and the fact that GIC's affirmative vote would suffice to approve the Merger, and stated that the minority shareholders would receive $140 in cash for each share of Gast common stock and $10 in cash for each share of Gast preferred stock. Paragraph 44 describes statements in the Notice indicating the board's unanimous recommendation of the Merger and its belief that the Merger was in the best interest of the minority shareholders and would eliminate unspecified "investment risk" for minority shareholders. Finally, paragraph 45 alleges that the Notice described a series of transactions that were anticipated to occur, and which did in fact occur, following the Merger, including the sale by the continuing shareholders of their remaining Gast shares and the sale of a 49% interest in post-merger Gast to RDV and its affiliates. None of these statements provide a basis for concluding that Defendants misled Krieger and the minority shareholders in a manner designed to discourage them from exercising their appraisal rights and obtaining greater value for their shares. For the most part, the statements were opinions or involved future events that actually occurred as described, and there is no indication how any of those statements

would have had a material effect on a shareholder's decision about whether to exercise appraisal rights.

Paragraph 46 alleges a list of omissions in the Notice. The allegations concern Defendants' failure to disclose: (1) any financial information at all, even though Defendants had in their possession financial data which, when applied against standard cash flow multiples, showed a valuation in excess of $300 per share; (2) information regarding the real purpose of the Merger, which was to structure Gast for a sale to a third party or an Initial Public Offering ("IPO"); (3) that Defendants had retained McDonald & Co. to assist them in selling Gast or taking Gast public; (4) that Deloitte & Touche was in the process of performing a valuation of Gast which included the RDV transaction as a substantial component of value; and (5) that Defendants did not obtain a "fairness opinion" indicating that the Merger was fair to the minority shareholders.[4]

Recently, in *Skeen v. Jo–Ann Stores, Inc.*, 750 A.2d 1170 (Del.2000), the Delaware Supreme Court addressed a disclosure claim similar to the claim asserted in this case. The plaintiffs in that case were minority shareholders of House of Fabrics, Inc. ("HF"), which was acquired by Fabri–Centers of America, Inc. ("FCA") in a two-step transaction which included a cash-out merger of the minority shareholders. In connection with the merger, FCA sent the shareholders a notice which "included the type of information normally found in a merger proxy statement, including a description of the companies, the background of the merger, merger terms, and relevant financial information." *Skeen,* 750 A.2d at 1172. The plaintiffs accepted the merger consideration and did not seek an appraisal. Nine months after the merger occurred, the plaintiffs filed an action alleging that the directors of FCA and HF

---

4. The complaint also alleges other omissions relating to McDonald & Co. Because McDonald & Co. has been dismissed as a defendant, the Court finds those allegations to be irrelevant to the claims against the remaining Defendants.

breached their fiduciary duties by failing to disclose: (1) FCA's plans for HF; (2) that HF's board decided to sell the company to satisfy stockholders who obtained their stock in HF as a result of HF's earlier bankruptcy; and (3) certain financial information, including the range of HF's fair value as determined by HF's investment banker, financial projections and reports, and prices discussed with others for the sale of HF. In discussing the duty of disclosure, the court noted that it

> is a specific formulation of [ ] general [fiduciary] duties that applies when the corporation is seeking stockholder action. It requires that directors "disclose fully and fairly all material information within the board's control. . . ." Omitted facts are material "if there is a substantial likelihood that a reasonable stockholder would consider [them] important in deciding how to vote." Stated another way, there must be "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable stockholder as having significantly altered the 'total mix' of information made available."

*Id.* (alteration in original)(footnotes omitted). Applying these principles, the court rejected the plaintiffs' claim that FCA failed to disclose its plan for HF and the steps it had taken as of the merger date to implement that plan because the plaintiffs failed to identify any facts regarding the alleged plan that would have been important to the appraisal decision. The court next rejected the plaintiffs' claim that the notice failed to disclose that the real reason HF decided to sell the company was to satisfy the stockholders who obtained their HF stock through HF's prior bankruptcy. The court found that the undisclosed reason "would add little or nothing to the information provided" because all HF stockholders would want to realize the best price available for their shares. *Id.* at 1173. Finally, the court found that the financial data which the plaintiffs alleged should have been disclosed by the defendants would not have been material to the

decision to seek an appraisal. The plaintiffs were provided a copy of the fairness opinion given by HF's investment banker, HF's audited and unaudited financial statements through January 31, 1998, and HF's quarterly market prices and dividends through January 31, 1998. Although the court "agree[d] that a stockholder deciding whether to seek appraisal should be given financial information about the company that will be material to that decision," the court held that the omitted information was not material because the plaintiffs only alleged that it would have been "helpful" and not that it contradicted or was inconsistent with the disclosed information. *Id.* at 1174.

The Court finds several major differences between the claims in this case and those in *Skeen*. First, the minority shareholders in *Skeen* received adequate financial information to allow them to make an informed decision whether to exercise their appraisal rights. Here, Krieger alleges that the Notice contained no financial information whatsoever and that certain information that was not disclosed would have indicated a valuation over twice the offered price. Furthermore, nothing in the complaint suggests that the undisclosed financial information was available to Krieger from other sources. *Cf. Walk v. Baltimore & Ohio R.R.*, 847 F.2d 1100, 1108 (4th Cir.1988)(holding that the plaintiff's non-disclosure claim failed to allege fraud because the information was fully disclosed to the shareholders in the notice of merger). Second, while the plaintiffs in *Skeen* failed to allege any specific facts about the "plan" they alleged the defendants should have disclosed, in this case, Krieger's allegations indicate that the purpose of the merger was actually to enable Defendants to carry out their plan of either selling Gast or taking it public without being hindered by the minority shareholders. Krieger also alleges that Defendants retained an investment banker to assist them in their efforts to liquidate their interests. This information,

especially in the absence of any financial information, would have been material to a minority shareholder's decision to seek an appraisal. Finally, the defendants in *Skeen*, as in many cash-out merger cases, obtained a fairness opinion and disclosed it to the minority shareholders. Here Defendants did not obtain a fairness opinion, but failed to disclose this fact to Krieger and the other shareholders.

Based on the foregoing, the Court concludes that Krieger has alleged sufficient facts to state claims of fraud and breach of fiduciary duty based upon Defendants' failure to disclose information that would be material to the minority shareholders' decision whether to seek an appraisal, which fall within the exception to exclusivity under § 450.1762(3). "[A]llegation[s] that directors totally ignored their fiduciary duty to disclose material facts in connection with a cash-out merger would seem to raise a serious question of director fidelity 'unrelated to judgmental factors of valuation[.]'" *Turner v. Bernstein*, No. Civ. A. 16190, 2000 WL 776893, at *14 (Del.Ch. June 6, 2000)(mem.op.)(addressing claim that defendants breached their fiduciary duties by failing to disclose information material to the decision of whether to seek an appraisal). While the appraisal process should generally provide the exclusive procedure for determining the value of a minority shareholder's shares, it is the disclosure of all material information that validates that process. When directors and/or controlling shareholders fail to disclose such information, as is alleged here, the appraisal remedy afforded becomes meaningless. Although Krieger has stated a claim, the Court does find that certain alleged omissions would not be material to the appraisal decision. Those omissions include: (i) the identity of the directors of Gast or GIC (*see* Compl. ¶ 46(b)); the fact that McDonald & Co. had been instrumental in the RDV transaction and that other entities had been in contact with Gast concerning acquisition or sale of Gast (*see id.* ¶ 46(d)); the fact that a letter of intent was signed by RDV prior to the shareholders meeting with regard to the RDV's purchase of a 49% interest in Gast (*see id.* ¶ 46(e)); and that McDonald & Co. received substantial fees in connection with the RDV transaction (*see id.* ¶ 46(f)). In light of the information actually disclosed in the Notice, the disclosure of this information would not have affected a shareholder's decision to seek appraisal rights. Therefore, the Court will strike those paragraphs from the complaint pursuant to Fed.R.Civ.P. 12(f).

### 3. Who Bears the Burden of Proof?

■ The final issue presented is who bears the burden of proof and what that burden is. Drawing on *Weinberger*, Krieger contends that Defendants have the burden of proving the "entire fairness" of the transaction. Defendants, on the other hand, contend that Krieger has the burden of proof on his claims and, if Defendants are able to establish any of the conditions under M.C.L. § 450.1545a(1), they will have a complete defense to Krieger's claims.

In support of their argument, Defendants cite the Michigan Court of Appeals' recent decision in *Camden v. Kaufman*, 240 Mich.App. 389, 613 N.W.2d 335 (2000)(per curiam). In that case, the plaintiff, a minority shareholder in H.W. Kaufman Financial Group, Inc. ("HWK"), sued the defendants regarding a merger between HWK and AJK Acquisition Company ("AJK") in which the plaintiff was cashed-out of his interest. The plaintiff alleged that the defendants—directors and majority shareholders of HWK—breached their fiduciary duties by failing to obtain the maximum value for HWK's common stock in the merger and engaged in the merger for their own personal benefit and to the detriment of the plaintiff. The court of appeals affirmed the trial court's judgment dismissing the plaintiff's claim on the basis that the plaintiff voted in favor of the merger and therefore was barred from

challenging the validity of the merger. *See Kaufman,* 240 Mich.App. 389, 613 N.W.2d 335. Although that ruling effectively disposed of the case, the court continued on to address the other arguments raised by the plaintiff on appeal. One of those arguments was that the plaintiff's claim for breach of fiduciary duty under M.C.L. § 450.1541a was not barred by M.C.L. § 450.1545a, which governs interested director transactions. The court rejected the argument, noting that § 1545a, which was the more specific statute, takes precedence over § 1541a, which governs fiduciary duties of directors and officers generally. Thus, the court held, "once proper approval of an interested transaction is obtained [as specified in § 1545a], the type of challenges available are limited to waste, fraud, illegality, or the like." *Id.* at 338.

Having reviewed the *Camden* decision, the Court finds it distinguishable from this case because, unlike the plaintiff in *Camden,* Krieger is not alleging that Defendants failed to obtain the maximum fair value for Gast common stock. Instead, his claim is that Defendants omitted information in the Notice that was material to his and the other minority shareholders' decisions regarding an appraisal. There is a qualitative difference between the two claims: the failure to obtain the maximum share price in a merger affects all shareholders, whereas the failure to disclose information material to the decision whether to accept the amount offered or seek an appraisal affects only the minority shareholders who are being cashed-out. For this reason, the Court finds that § 1545a is not applicable in this case because it pertains to transactions between the corporation and directors or officers, as indicated by the first basis for upholding the validity of such a transaction, which is that "[t]he transaction is fair to the corporation at the time entered into." M.C.L. § 450.1545a(1)(a). The question in this case is not whether the Merger was fair to the corporation or its shareholders, but instead whether the directors fulfilled their duty of disclosure to the minority shareholders.

The Court's conclusion that § 1545a does not apply in this case does not automatically mean that Defendants are required to prove the "entire fairness" of the transaction. As noted above, a plaintiff has the initial burden, even under *Weinberger,* of pleading facts sufficient to demonstrate that the appraisal remedy is inadequate. Krieger's claim in this case hinges upon the adequacy of disclosures in the Notice because, as the Court has already noted, absent such allegations, Krieger's claim is merely a disagreement over value that could have been addressed through an appraisal. Thus, as in any other fraud or breach of fiduciary duty case, Krieger has the burden of proving that Defendants failed to disclose information in the Notice that Krieger would have considered important in deciding whether to seek an appraisal. If Krieger carries this burden, Defendants will be liable without regard to whether the merger satisfied the test of "entire fairness."

### Conclusion

For the foregoing reasons, the Court will enter an Order stating that: (i) Krieger's claims are subject to the exclusivity provision in M.C.L. § 450.1762(3); (ii) Krieger's claims fall within the exception to exclusivity for claims alleging "unlawful or fraudulent" action; and (iii) Krieger has the burden of proving that Defendants failed to disclose material facts in the Notice.